IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL BERRYMAN,

                    Plaintiff,

v.                              //    CIVIL ACTION NO. 1:16CV47
                                      (Judge Keeley)

OFFICER CHRISTOPHER MULLEN;
OFFICER JOHN DOE 1, BOP Officer;
OFFICER JOHN DOE 2, BOP Officer;
LT. JERALD RIFFLE; OFFICER BRAD
BROWN; OFFICER JOHN BRADY;
FOUR UNKNOWN BOP OFFICERS;
and PA CHRISTOPHER MEYER,

                    Defendants.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

On March 23, 2016, the plaintiff, Michael Berryman ("Berryman"),

filed this <u>Bivens</u>[1] action, alleging that the defendants failed to

protect him from a dangerous cellmate, violated his due process rights

by placing him in punitive segregation, and failed to provide

appropriate medical treatment (Dkt. No. 1). Pursuant to 28 U.S.C. § 636

and the local rules, the Court referred the complaint to the Honorable

James E. Seibert, United States Magistrate Judge, for initial review.

Now pending is Magistrate Judge Seibert's Report and Recommendation

("R&R"), recommending that the Court grant in part and deny in part the

_____

[1] In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of
Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court permitted suit
against federal employees in their individual capacity, creating a
counterpart to suit under 42 U.S.C. § 1983.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

defendants' motion to dismiss or, in the alternative, for summary

judgment (Dkt. No. 60).

## I. BACKGROUND[2]

### A. The Complaint

While asleep in the Special Housing Unit ("SHU") at United States

Penitentiary, Hazelton ("USP Hazelton") during the early morning hours

of May 8, 2014, Berryman was allegedly attacked by his cellmate.

Berryman claims that he was awakened when his cellmate began stomping

on his "left ribcage." Although able to activate an emergency call

button, Berryman was quickly knocked unconscious by his assailant. He

regained consciousness sometime during the assault and alleges that,

as he attempted to protect himself, he was quickly knocked unconscious

again.

After Berryman regained consciousness the second time, Officer

Christopher Mullen ("Officer Mullen"), who had arrived on the scene,

helped him to his feet and took him to an observation cell where

Berryman was left with paper clothing and bedding.[3] According to

---

[2] The R&R contains a more thorough recitation of Berryman's
factual allegations, as well as the procedural history of the case.

[3] Berryman alleges that he and his cellmate were placed in paper
clothing the previous day due to his cellmate's belligerent behavior
after receiving word of his father's death (Dkt. No. 1 at 12-13).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

Berryman, he was awakened later that morning by Physician's Assistant
Christopher Meyer ("PA Meyer"), who noted his superficial injuries but
left without conducting a full examination (Dkt. No. 1 at 14-15).

The central allegation of Berryman's complaint that forms the
basis for claims one, two, and three of his complaint is that, prior
to the attack, Berryman had repeatedly advised the defendants that his
cellmate, who had a history of violence toward other inmates, had
threatened variously to beat, rape, and kill him if Berryman was not
moved to another cell. Id. at 11-14. Berryman alleges that, despite
having notice of this risk, Officer John Doe I, Officer John Doe II,
Lieutenant Jerald Riffle ("Lt. Riffle"), Officer Brad Brown ("Officer
Brown"), Officer John Brady ("Officer Brady"), Officer Mullen, and Four
Unknown B.O.P. Officers ignored the warning, failed to respond
reasonably, and took no action to prevent the attack. Id. at 9-10, 16.
In his fourth claim, Berryman alleges that Officer Brown, Lt. Riffle,
and the Four Unknown B.O.P. Officers violated his due process rights
by taking his property, placing him in paper clothing, and subjecting
him to punitive segregation without a hearing. Id. at 16. Finally, he
claims that PA Meyer failed to provide timely and sufficient medical
treatment for his injuries. Id. at 17.

In his complaint, Berryman describes the following injuries:

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

> I have 4 protruding disk [sic] in lower lumbar, severe stenosis in L lumbar, thecal sac encroachments in lower lumbar, sliped [sic] disk in L lumbar, stenosis in cervical spine C3-C7, disk herniation present moderately encroaching upon the thecal sac at the C03/04 level[,] thecal sac encroachment and Y hard disks/osteophyt[e] complex thecal sac encroaching C6/seven, evidence of remote rib fractures and rib deformity lower left ribs.

Id. In his prayer for relief, Berryman seeks a declaration that his constitutional rights have been violated, and an award of "compensatory and punitive damages to the sum of 3,000,000 dollars," attorneys' fees and costs, and anything else that the Court deems just. Id.

**B.      The Defendants' Motion**

After Magistrate Judge Seibert concluded that Berryman's complaint did not warrant summary dismissal, he directed the United States Marshals Service to effect service on the defendants (Dkt. No. 22). The defendants later moved to dismiss Berryman's complaint or, in the alternative, for summary judgment (Dkt. No. 51). In the motion, they argued that 1) they are entitled to qualified immunity, 2) they did not fail to protect Berryman from an assault, 3) they were not deliberately indifferent to Berryman's medical condition, and 4) PA Meyer is immune from suit as a commissioned officer of the Public Health Service (Dkt. No. 52 at 6-15).

In response, Berryman moved to dismiss the defendants' motion, asserting that he could not adequately oppose it "until[] he is granted

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

some limited discovery" (Dkt. No. 56 at 2). He also submitted a sworn
declaration that many of the individual defendants had falsely stated
that he had never indicated he was in danger (Dkt. No. 56-1).

**C.    Report and Recommendation**

Magistrate Judge Seibert thoroughly considered these issues in an
R&R filed on May 15, 2017 (Dkt. No. 60). First, he reasoned that
Berryman's failure-to-protect allegations stated a cognizable Eighth
Amendment claim that the defendants had been deliberately indifferent
to a known risk of harm. Id. at 13. Because the defendants had not
provided enough evidence, however, Magistrate Judge Seibert could not
"make a determination . . . as to whether Plaintiff did in fact
repeatedly request to be moved; whether Inmate V.A. did in fact have
a known track record for attacking cellmates; or whether Plaintiff had
more involvement in the May, 2014 incident than the parties have
admitted."

Furthermore, Magistrate Judge Seibert found that the only
evidence of record was in conflict: Berryman averred that he had
repeatedly advised the defendants of a dangerous situation and had
asked to be moved; the defendants averred that they were completely
unaware Berryman was at risk of harm. Moreover, the defendants had not
provided any medical records, incident reports, separatee lists,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

disciplinary records, or video surveillance tending to support their
contentions. Id. at 15-16. Given that material facts were in dispute,
Magistrate Judge Seibert recommended that the defendants' motion to
dismiss Berryman's failure-to-protect allegations be denied. Id. at 17-
18.

The R&R also construed Berryman's fourth claim - labeled "due
process" - as asserting two constitutional violations: 1) confinement
in punitive segregation without a hearing in violation of the Fifth
Amendment's provision of due process; and 2) denial of access to
regular clothing, regular bedding, and personal belongings in violation
of the Eighth Amendment prohibition against cruel and unusual
punishment. Id. at 26-32. As to the Fifth Amendment due process
violation, Magistrate Judge Seibert reasoned that, even assuming
Berryman's segregation had been based on false allegations, he "does
not have a constitutional right to be free from false disciplinary
reports." Id. at 28-29. As to Berryman's Eighth Amendment claim, he
reasoned that involuntary confinement in the SHU without regular
clothing or personal belongings does not constitute cruel and unusual
punishment. Id. at 31-32. He therefore recommended that Berryman's
fourth claim against Lt. Riffle, Officer Brown, Officer Brady, and Four
Unknown B.O.P. Officers be dismissed.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

Magistrate Judge Seibert further concluded that Berryman's fifth claim, alleging that PA Meyer had failed to timely and adequately treat his injuries, must be dismissed in its entirety because, as a commissioned officer of the Public Health Service, under 42 U.S.C. § 233(a), PA Meyer is immune from Bivens suits, and can only be sued pursuant to the Federal Tort Claims Act ("FTCA"). Id. at 25-26. Finally, Magistrate Judge Seibert recommended that the Court dismiss all of Berryman's claims against John Doe I, John Doe II, and the Four Unknown B.O.P. Officers, as he has failed for more than a year to provide their true identities and to effect service of process upon them. Id. at 32-33.

The R&R informed the parties of their right to file "written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections." It further warned them that the failure to do so may result in waiver of their right of appeal. Id. at 34. Although the defendants did not file any objections to Magistrate Judge Seibert's recommendations, after receiving an extension of time, Berryman did file timely objections on June 30, 2017 (Dkt. Nos. 63; 67).[4]

---

[4] On August 14, 2017, the Court dismissed Berryman's separately filed FTCA case for failure to state a claim (Civ. No. 1:16cv63).

MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]

## II. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). On the other hand, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Vague objections to an R&R distract a district court from "focusing on disputed issues" and defeat the purpose of an initial screening by the magistrate judge. McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (citing Howard's Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997)). Failure to raise specific errors waives the claimant's right to a de novo review because "general and conclusory" objections do not

---

Thereafter, Officer Mullen, Officer Brown, Officer Brady, and Lt. Riffle moved to dismiss this case pursuant to the judgment bar of 28 U.S.C. § 2676 (Dkt. No. 69).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

warrant such review. Id. (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); Howard's Yellow Cabs, 987 F. Supp. at 474); see also Green v. Rubenstein, 644 F. Supp. 2d 723 (S.D.W. Va. 2009). Indeed, failure to file specific objections waives appellate review of both factual and legal questions. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984); see also Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991).

### III. DISCUSSION

In his "Motion of Objection" to the R&R, Berryman objects "to all the summary judgment that has been ruled in favor of the defendants and to the fact that Plaintiff filed two [] motions for discovery and they were denied" (Dkt. No. 67 at 2). Aside from several inconsequential factual inaccuracies,[5] Berryman's objections fail to identify specific errors in Magistrate Judge Seibert's findings, thereby placing the Court under no obligation to conduct a de novo review. Diamond, 414 F.3d at 315.

---

[5] For instance, the R&R states that "officers" saw Berryman being attacked upon arrival at his cell, while only one officer's declaration actually says as much; the R&R suggests that Berryman must have arrived at USP Hazelton in May 2014, but he claims to have arrived in March 2014; and the R&R states that Nurse "Frind" returned Berryman's clothing, but he claims "Lt. Frindley" did so (Dkt. No. 67 at 2-3).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

When his objections are liberally construed, however, it is clear that Berryman takes issue with the R&R's conclusion that he failed to allege a due process violation, and its recommendation that his failure-to-treat claim against PA Meyer be dismissed. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (noting that pro se objections should be "construed to raise the strongest arguments that they suggest" (internal quotation omitted)). Upon de novo review of those issues, the Court discerns no errors in Magistrate Judge Seibert's recommendations.

**A.    Due Process Rights**

Berryman's fourth claim alleges that Officer Brown, Lt. Riffle, and Four Unknown B.O.P. Officers violated his due process rights when they "took all property from [him], placeing [sic] into paper clothing without anything for 11 days." According to Berryman, this "punitive segregation" imposed such an "atypical and significant hardship" that he was entitled to the protection of a hearing, which he did not receive (Dkt. No. 1 at 16). Magistrate Judge Seibert reasoned that Berryman took issue with being placed in segregation on the basis of a charge that later was determined to have been false, a claim that he further reasoned has no constitutional basis (Dkt. No. 60 at 27-28). In his objections, Berryman clarifies that he "received a disciplinary

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
<u>ROSEBORO</u> NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

for a torn sheet and blanket after [he] was placed into paper clothing
and it was found to be no good for due process reasons[.] [He] spent
11 days in paper, no blankets, hygiene strip cell, and [he] did nothing
wrong to be there" (Dkt. No. 67 at 3).

Although touched on briefly in the R&R, Berryman's due process
claim is procedural and obliges the Court to determine 1) whether there
is a protectable liberty interest at issue, and 2) whether the interest
was, in fact, protected by adequate process. <u>Incumaa v. Stirling</u>, 791
F.3d 517, 526 (4th Cir. 2015). As Berryman recognizes, "prisoners have
a liberty interest in avoiding confinement conditions that impose
'atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life.'" <u>Id.</u> (quoting <u>Sandin v. Conner</u>, 515
U.S. 472, 484 (1995)). Importantly, atypical conditions do not "in and
of themselves provide the basis of a liberty interest," but must arise
from "policies or regulations," <u>id.</u> at 527, such as prison
classification regulations. <u>Prieto v. Clarke</u>, 780 F.3d 245, 249 (4th
Cir. 2015); <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, (2005) ("We have
held that the Constitution itself does not give rise to a liberty
interest in avoiding transfer to more adverse conditions of
confinement.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

When an inmate is sentenced to the general population and subsequently is placed in administrative segregation, the "baseline for atypicality" is the condition of general population prison life. Incumaa, 791 F.3d at 527-28. Nonetheless, "[t]he mere limitations on privileges, property, and activities for administratively segregated inmates 'fall[] within the expected perimeters of the sentence imposed by a court of law.'" Hubbert v. Washington, No. 7:14-cv-00530, 2017 WL 1091943 (W.D.Va. Mar. 22, 2017) (quoting Sandin, 515 U.S. at 485). Thus, to determine whether an "atypical and significant hardship" has been imposed, the Supreme Court has outlined a fact intensive inquiry into "(1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." Incumaa, 791 F.3d at 530 (citing Wilkinson, 545 U.S. 209); see also Rivera v. Virginia Dep't of Corrections, No. 7:15CV00156, 2016 WL 7165997, at *9-*10 (W.D.Va. Dec. 8, 2016).

Several decisions by the Supreme Court and Fourth Circuit are particularly instructive in this regard. In Beverati v. Smith, the plaintiff inmates complained of their six-month administrative

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

confinement with conditions "more onerous than those specified in prison regulations." 120 F.3d 500, 503-04 (4th Cir. 1997).

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold.

Id. at 504. Even accepting these allegations as true, the Fourth Circuit concluded that, "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." Id.

In Wilkinson v. Austin, the Supreme Court analyzed whether due process protections adhered to a prisoner's designation to Ohio's Supermax facility, a "maximum-security prison[] with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general population." 545 U.S. at 213. The conditions in Supermax were more restrictive than even Ohio's death row or administrative control units, as inmates remained in their constantly lit, 7 by 14 foot cell for 23 hours per day. Moreover, the cells and daily routine were designed to prevent human contact, making the prison "synonymous with extreme isolation." The classification system also meant that inmates

could remain confined in Supermax indefinitely - limited only by the length of their sentence - and inmates in Supermax also lost parole eligibility. Id. at 214-15. The Supreme Court found that, "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest," the combination of severe conditions, indefinite placement, and parole ineligibility "impose[d] an atypical and significant hardship," thus creating a liberty interest in avoiding Supermax. Id. at 224 (distinguishing Sandin, in which the Supreme Court found no liberty interest in avoiding 30-day placement in restrictive disciplinary confinement).

In Incumaa v. Stirling, the Fourth Circuit relied on Beverati and Wilkinson to conclude that inmates had a liberty interest in avoiding confinement in North Carolina's Special Management Unit ("SMU"). 791 F.3d at 532. First, conditions in the SMU were severe: the plaintiff had "provided uncontested evidence describing . . . the near-daily cavity and strip searches; the confinement to a small cell for all sleeping and waking hours, aside from ten hours of activity outside the cell per month; the inability to socialize with other inmates; and the denial of educational, vocational, and therapy programs." Id. at 531 (distinguishing Beverati because it did not involve such a high degree of social isolation). Further, confinement in the SMU was indefinite

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

and could last many years; the plaintiff himself had been confined there for 20 years. Id.

Here, the entirety of Berryman's due process claim is the allegation that, without a hearing or just cause, he was placed in a "strip cell" for 11 days without his own clothing, hygiene products, or other personal property. Taking these allegations in the light most favorable to Berryman, they do not demonstrate the existence of a liberty interest. Beverati, 120 F.3d at 503. As an initial matter, Berryman failed to allege that his segregation arose from "policies or regulations." Incumaa, 791 F.3d at 527. But more importantly, he failed to allege facts plausibly sufficient to support the bare legal conclusion that the conditions or duration of his confinement subjected him to an "atypical and significant hardship" (Dkt. No. 1 at 16).

First, the property restrictions allegedly imposed upon Berryman are not such a "dramatic departure" from the ordinary conditions of general population prison life that they establish a state-created liberty interest. See Prieto, 780 F.3d 254; see also Prince v. Crawford, No. 3:16-cv-02317, 2017 WL 2991350, at *15 (S.D.W. Va. May 31, 2017). There is no allegation that Berryman's segregation involved the invasive or extremely isolated conditions described in Incumaa. 791 F.3d at 532. Much like the six months of filthy and uncomfortable

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

conditions to which inmates were allegedly subjected in Beverati, deprivation of normal clothing and hygiene products for 11 days is not atypical enough to merit constitutional protections. Beverati, 120 F.3d at 503; see also Sandin, 515 U.S. at 486 (30 days).

In addition, "the concerns espoused in Wilkinson and Incumaa focus on the indefinite nature of supermax confinement." Hubbert, No. 7:14-cv-00530, 2017 WL 1091943, at *6. Berryman simply does not allege that his brief tenure in "punitive segregation" was indefinite or that it had any collateral consequences on his sentence. Incumaa, 791 F.3d at 530. Rather, his allegations regarding the conditions of his segregation are exactly the type that, "standing alone," are insufficient to create a liberty interest. Wilkinson, 545 U.S. at 224.

The Court "do[es] not in any way minimize the harshness of" Berryman's 11-day segregation, as his conditions of confinement were no doubt undesirable during that time. Prieto, 780 F.3d at 254 (discussing the conditions on Virginia's "death row"). Nonetheless, for the reasons discussed, it is plain that his segregation fell within the bounds of the "broad latitude" that the Supreme Court affords correctional officers "to set prison conditions as they see fit." Id. (Wilkinson, 545 U.S. at 227). Therefore, the Court agrees that Berryman

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

has failed to state a plausible claim for relief regarding alleged procedural due process violations.

**B.    Failure to Provide Treatment**

Magistrate Judge Seibert recommended that Berryman's fifth claim asserting that PA Meyer failed to provide timely and appropriate treatment for his injuries be dismissed because PA Meyer is immune from a Bivens suit as a commissioned officer of the Public Health Service (Dkt. No. 60 at 26). In his objections, Berryman reiterates that the BOP has consistently delayed proper medical treatment - including X-ray, CT, and MRI scans. Although Berryman believes that he experiences neck and back problems, along with associated pain, that are the direct result of the attack in question, few doctors have credited his complaints (Dkt. No. 67 at 4-5).

The viability of Berryman's failure-to-treat claim depends on whether he may sue PA Meyer, not the extent of his injuries. As Magistrate Judge Seibert discussed, the sole recourse an inmate such as Berryman has for injury inflicted by a commissioned officer of the Public Health Service acting within the scope of his employment is against the United States pursuant to the Federal Tort Claims Act. 42 U.S.C. § 233(a); Carlson v. Green, 446 U.S. 14, 18-19 (1980). In most cases, immunity is "established by a

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

declaration affirming that the defendant was a PHS official during the relevant time period." Hui v. Castaneda, 559 U.S. 799, 811 (2010). PA Meyer submitted such a declaration in this case, the veracity of which has not been contested (Dkt. No. 52-7). Therefore, despite Berryman's contentions concerning his injuries and treatment, PA Meyer is not subject to suit in this Bivens action, and the failure-to-treat claim against him cannot survive.

## IV. CONCLUSION

For the reasons discussed, as well as those more fully outlined in the R&R, the Court:

1) **ADOPTS** the R&R (Dkt. No. 60);

2) **DENIES in part** the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment as to Berryman's failure-to-protect claims against Lt. Riffle, Officer Brady, Officer Brown, and Officer Mullen (Dkt. No. 51);

3) **GRANTS in part** the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment as to Berryman's due process claim against Officer Brown, Officer Brady, and Lt. Riffle; his claim that PA Meyer was deliberately indifferent

18

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

to his medical needs; and all of his claims against John Doe I, John Doe II, and the Four Unknown BOP Officers; and

4) **GRANTS in part** and **DENIES in part** Berryman's Motion to Dismiss or Stay the Defendants' Motion to Dismiss or for Summary Judgment (Dkt. No. 56).

### V. ROSEBORO NOTICE

The Court **ADVISES** Berryman that, on August 15, 2017, Officer Mullen, Lt. Riffle, Officer Brown, and Officer Brady filed a further motion to dismiss Berryman's claims against them (Dkt. No. 69). More particularly, they argue that the "judgment bar" of 28 U.S.C. § 2676 precludes Berryman's pending Bivens claims because the Court recently dismissed his separate FTCA case (Dkt. No. 70 at 6). Berryman has a right to respond to their motion, and the failure to do so could result in the entry of an order of dismissal against him. Davis v. Zahradrich, 600 F.2d 458, 460 (4th Cir. 1979); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing a complaint, the Court "must accept as true all of the factual allegations contained

19

in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "[A] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 60] AND GRANTING IN PART AND
DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS OR, IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DKT. NO. 51], AND
ROSEBORO NOTICE REGARDING MOTION TO DISMISS [DKT. NO. 69]**

Therefore, the Court **DIRECTS** Berryman to file any opposition to the defendants' motion within 21 days of the entry of this Order, explaining why his case should not be dismissed. Berryman's response may not exceed 25 pages.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and to the <u>pro se</u> plaintiff, certified mail and return receipt requested.

DATED: August 17, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE